**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Julia Ann Talley, | ) | No. CV-08-2165-PHX-FJM |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| Pembrooke Occupational Health, Inc., | ) ) ) | |
| Defendant. | ) ) ) | |

The court has before it defendant's motion for partial summary judgment (doc. 41), plaintiff's response (doc. 45), and defendant's reply (doc. 49). We also have before us plaintiff's motion for summary judgment (doc. 43), defendant's response (doc. 47), and plaintiff's reply (doc. 50).

**I**

Plaintiff Julia Talley worked as a salesperson for Pembrooke Occupational Health, Inc., a company providing pre-employment drug screening for client companies. On July 11, 2003, she entered into a written employment contract with Pembrooke that described the terms and conditions of her employment and compensation. PSOF, exhibit 1 ("employment contract"). The agreement stated that "Commissions of 5% of revenue will be paid for 24 months beginning with the first month that the client is billed. Beginning month 25, 1% of revenue will be paid until your termination of employment with Pembrooke." Id. The

contract further provided that "Commissions will be paid on all fees to the clients sold by you except the cost of collection fees." Id.

In October 2004, plaintiff secured a contract with the Department of Interior ("DOI"). PSOF ¶ 11. Due to the nature of the contract, the commission structure was modified for this client, id., however, the modified agreement was not reduced to writing. Talley contends that she was entitled to receive 2% for all revenues, including "collection fees," collected from the DOI for the first 3 years of the contract, and 1% thereafter until termination of her employment. Id. ¶¶ 11, 13; Talley Deposition at 167-68. Pembrooke paid Talley 2% commissions on the DOI contract for almost a year from December 2004 through October 2005. PSOF ¶ 14; DCSOF ¶ 14. In December 2005, Pembrooke stopped paying Talley DOI commissions, claiming that the contract was not profitable. Diveley Deposition at 49. She was then told in May 2006 that she was not receiving DOI commissions because DOI was in arrears in its payments. However, even after Pembrooke received the past due DOI payments, it neither informed Talley of the payments, nor paid her commissions on the revenue. PSOF ¶ 28. Pembrooke eventually renegotiated the terms of the agreement with DOI in order to make the pricing structure profitable. Cametas Depostion at 16.

Talley did not receive any commission payments on the DOI account after December 2005, although DOI remained a Pembrooke client. Pembrooke stopped paying Talley commissions on all of her accounts as of January 2008, although she remained employed with Pembrooke until January 2010. PSOF ¶ 43.

Talley filed this action against Pembrooke for breach of the employment contract on October 22, 2008.

**II**

Pembrooke seeks partial summary judgment on Talley's claim for commissions on the DOI account, asserting that it is barred by the statute of limitations. It argues that because Talley knew that the DOI commission payments stopped in December 2005, she had until December 2006 to file this claim. It therefore contends that her October 2008 claim is time-barred.

1   A claim for breach of employment contract must be filed within one year after the cause of action accrues. A.R.S. § 12-541(3). Generally, a cause of action accrues and the statute of limitations begins to run when one party is able to sue another. Gust, Rosenfeld & Henderson v. Prudential Ins. Co., 182 Ariz. 586, 588, 898 P.2d 964, 966 (1995). However, under the "discovery rule," when the injury or the act causing the injury has been difficult for the plaintiff to detect, the statute of limitations does not begin to run until the plaintiff knows or with reasonable diligence should know of the facts underlying the alleged breach. Id. 591, 898 P.2d at 969. The discovery rule is premised on the notion that "it is unjust to deprive a plaintiff of a cause of action before the plaintiff has a reasonable basis for believing that a claim exists." Id. at 589, 898 P.2d at 967.

  Although Talley was aware that Pembrooke had stopped paying DOI commissions in December 2005, she repeatedly inquired into the status of those payments while Pembrooke provided varying excuses for the delay. Pembrooke's president, Stefan Cametas, told Talley in December 2005 that she would no longer receive DOI commission payments. DSOF ¶ 7. In May 2006, Pembrooke's CFO told Talley that her commission payments were delayed because DOI's payments were past due. PCSOF ¶ 15. Over the course of many months, Talley was told that the DOI commissions were not paid because DOI was in arrears, id., that the CFO is "swamped" and is trying to hire additional help, id. ¶¶ 18-19, that the CFO was not able to calculate her commissions in time for a fourth quarter commissions check, id. ¶ 31, that a "revenue posting delayed [her] paycheck," id., that the "systems were broken" so there was a problem with closing the books, id. ¶ 33, and ultimately the CFO explained that he believed Talley had received an "overpayment," yet no overpayment calculation was produced, id. ¶¶ 38-39. As late as October 9, 2008, Pembrooke's owner, Jon Cametas continued to assure Talley that he was working on the commission calculation. Id. ¶ 70.

  Because of Pembrooke's ongoing assurances and excuses, Talley did not have a reasonable basis for believing that she had a claim until well into 2008. We conclude that Talley's claim for DOI commissions is timely. Pembrooke's motion for partial summary judgment is denied (doc. 41).

**III**

Talley also moves for summary judgment arguing that no material fact exists regarding Pembrooke's breach of her employment agreement and that she is therefore entitled to judgment as a matter of law. She contends that she was entitled to commission payments under her employment contract but that Pembrooke failed to pay DOI commissions since December 2005 and non-DOI commissions since January 2008. PSOF ¶ 43. She claims that she is entitled to past due commissions in the amount of $133,858.00. Id. ¶ 41. She also claims that she is entitled to treble damages under A.R.S. § 23-355, which subjects an employer to treble damages if it fails to pay earned wages.

Pembrooke counters that material issues of fact preclude summary judgment. It first attempts to create a factual dispute regarding the terms of the commission agreement on the DOI account. Talley contends that she was entitled to 2% of all revenue received from the DOI for the first 36 months of the contract, then 1% of all revenue thereafter until the date of termination of her employment. In opposition, Pembrooke argues only that Russell Basch, the Pembrooke representative who negotiated the DOI commission arrangement, "cannot remember the details of the agreement he reached with Plaintiff." Pembrooke Response at 5. This is insufficient to create an issue of fact regarding the terms of the agreement. See Fed. R. Civ. P. 56(e)(2). Pembrooke acknowledges that it paid Talley 2% commissions on the DOI contract for almost a year during 2004 to 2005. DCSOF ¶ 14. This, as well as Talley's sworn testimony, is uncontroverted evidence of at least some of the terms of the agreement.

Pembrooke also argues that an issue of fact exists as to how long Talley was entitled to receive commissions on the DOI account. While the employment contract provides that Talley is generally entitled to receive commissions on her clients' revenue "until [her] termination of employment with Pembrooke," PSOF, exhibit 1, Pembrooke now contends that its DOI commission obligation ended when Stefan Cametas informed Talley in December 2005 that she would no longer receive commissions because the account was unprofitable. This presents a legal question, not a factual dispute. The issue is whether

Pembrooke had the legal authority to cancel the commissions agreement if the underlying contract was unprofitable. Pembrooke presents no support for this position and thus it will not serve to defeat summary judgment on this issue. We conclude that Pembrooke had an obligation to pay Talley commissions on the DOI account and that it breached its obligation by failing to pay Talley any DOI commissions after December 2005. The amount of the damages on this claim remains open.

Other issues of material fact exist that preclude summary judgment. For example, the question of whether Talley was entitled to receive commissions on all DOI revenue, or whether "collection fees" were to be deducted is unresolved. An issue also exists as to whether Pembrooke's CFO applied the incorrect commission percentage entitling it to a set-off against Talley's damages claim. An issue also exists as to whether Pembrooke can show that a reasonable good faith dispute supported its decision to withhold Talley's wages as far back as December 2005. See A.R.S. § 23-352(3). Because these and other factual issues remain, we deny Talley's motion for summary judgment.

**IT IS ORDERED DENYING** Pembrooke's motion for partial summary judgment (doc. 41).

**IT IS FURTHER ORDERED GRANTING IN PART AND DENYING IN PART** Talley's motion for summary judgment (doc. 43). The motion is granted as to liability on Talley's breach of contract claim regarding the DOI account. The motion is otherwise denied.

DATED this 21st day of April, 2010.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge